Case 22-21292-GLT   Doc 110   Filed 09/01/23   Entered 09/01/23 15:05:18   Desc Main
Document      Page 1 of 8

FILED
9/1/23 2:52 pm
CLERK
U.S. BANKRUPTCY
COURT - WDPA

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re: | : | Case No. 22-21292-GLT |
| | : | |
| **DOROTHY JEAN GUY**, | : | Chapter 7 |
| | : | |
| *Debtor*. | : | Related to Dkt. Nos. 17, 53, 54, 55, 57, 59, 60, 69 and 76. |
| | : | |

### <u>MEMORANDUM OPINION</u>

As explained by the Court earlier this year, "[t]here is no 'wait and see' option when a debtor's sworn schedules betray a plan as empty promises or wishful thinking."[1]  Indeed, the chapter 13 trustee, Ronda J. Winnecour, requested conversion of this bankruptcy case because the Debtor, Dorothy Guy, was in material default of her plan obligations and had taken no steps to either cure the arrearage or amend her plan.  The Debtor did not contest the material facts, but sought yet another extension of time to file an amended plan.  Having already provided the Debtor with ample opportunities to modify the plan over the past 10 months, the Court found that any further delay would be prejudicial to creditors and converted the case to chapter 7.  The Court now memorializes its previous oral ruling.

**I.      BACKGROUND**

The Debtor filed a voluntary petition for relief under chapter 13 of the Bankruptcy Code[2] on July 4, 2022.[3]  Her primary assets are interests in nine parcels of real property located in

---

[1] <u>In re Kelly</u>, 649 B.R. 448, 452 (Bankr. W.D. Pa. 2023) ("Nor may a debtor 'rent' the automatic stay with de minimis 'adequate protection payments' under an unconfirmable 'placeholder plan.'").

[2] Unless expressly stated otherwise, all references to "Bankruptcy Code" or to specific sections shall be to the Bankruptcy Reform Act of 1978, as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), Pub. L. No. 109-8, 119 Stat. 23, 11 U.S.C. § 101, *et seq.*  All references to "Bankruptcy Rule" shall be to the Federal Rules of Bankruptcy Procedure.

[3] <u>See</u> *Voluntary Petition for Individuals Filing for Bankruptcy*, Dkt. No. 1.

Allegheny and Indiana Counties.[4] The Debtor estimates the value of the real estate to be $420,000 in the aggregate.[5]

The Allegheny County properties are encumbered by significant tax obligations which presumably triggered the bankruptcy filing. The Debtor originally estimated the tax debt to be $51,000 in her bankruptcy schedules,[6] but the various taxing authorities filed secured claims against the estate in excess of $554,000.[7] In her chapter 13 plan, the Debtor proposed to surrender five of the nine parcels and pay the taxes on the remaining parcels over a 60-month plan term.[8] She essentially sought to retain those properties where she had a cognizable equity interest (i.e., the market value of the property exceeds the amount of any tax liens asserted against it) and jettison the remaining underwater properties.[9] To fund the plan, the Debtor proposed monthly payments

---

[4] See *Official Form 106A/B, Schedule A/B: Property*, Dkt. No. 15 at 3-8. The Debtor estimated the values on her bankruptcy schedules as follows: 11 Verona Road, Pittsburgh, PA, Parcel No. 231-D-145 ($44,400); 1623 Worthington Street, Pittsburgh, Parcel No. 173-G-31-2 ($800); Frankstown Avenue, Pittsburgh, PA, Parcel No. 231-J-370 ($600); 183 9th Street, Lucerne Mines, PA, ($30,000); 21-27 Torrance Street, Pittsburgh, PA, Parcel No. 173-M-307 ($68,800); 11-19 Torrance Street, Pittsburgh, PA, Parcel No. 173-M-303 ($231,600); Broadhead Street, Pittsburgh, PA, Parcel No. 173-G-30 ($1,300); 705 Talbot Ave., Braddock, PA, Parcel No. 237-H-172 ($21,500); 711 Talbot Avenue, Braddock, PA, Parcel No. 237-H-175 ($18,100); 728-730 Cherry Way, Braddock, PA, Parcel No. 237-H-238 ($2,900). Id.

[5] Id. at 8.

[6] See *Official Form 106D, Schedule D: Creditors Who Have Claims Secured by Property*, Dkt. No. 15 at 15-25.

[7] See *Claims Register*. Additionally, the Pittsburgh Water and Sewer Authority has a secured claim of $4,583.18 related to Parcel Nos. 173-G-31-2 and 231-J-370. See Claim No. 31-1.

[8] See *Chapter 13 Plan Dated July 28, 2022*, Dkt. No. 17 at §3.5 (calling for the surrender of the following parcels: 173-G-30; 237-H-172; 237-H-175; 237-H-238; 173-G-31-2). The Debtor intended to retain her residence at 11 Verona Road as well as the properties on Frankstown Avenue and Torrance Street. See id. at §3.6.

[9] The Debtor proposed to retain the following properties in her plan:

| Property: | Scheduled Value: | Secured Claims: | Est. Equity: |
|---|---|---|---|
| 11 Verona Road | $44,400 | $21,007.29 | $23,392.71 |
| Frankstown Avenue | $600 | $26.28 | $573.72 |
| 183 9th St., Lucerne | $30,000 | $0 | $30,000 |
| 11-19 Torrance St. | $231,600 | $365,222.07 | ($133,622.07) |
| 21-27 Torrance St. | $68,800 | $103,534.93 | ($34,734.93) |

of $1,000.[10] Because those payments alone could not satisfy all of the Debtor's plan obligations, she also committed to selling the Lucerne Mines property and dedicating at least $45,000 from the sale proceeds towards the plan funding.[11]

The Court confirmed the plan on an interim basis,[12] but the chapter 13 trustee opposed entry of a final confirmation order.[13] The trustee observed that after nine months and two conciliation conferences, the Debtor failed to make any meaningful progress towards a confirmable plan.[14] Though the monthly payments represented only part of the plan funding, the trustee reported that the plan was already $3,000 in arrears.[15] In addition, the Debtor made no effort to employ a real estate broker or otherwise procure a buyer for a prompt sale of the Lucerne Mines property.[16] Because the Debtor made no effort to augment the plan funding beyond her nominal $1,000 payments and failed to propose an amended plan that either liquidated or surrendered additional properties (thereby reducing her plan obligations), the trustee requested the plan be denied and the case converted to chapter 7.[17]

During a contested confirmation hearing on May 9, 2023, the Debtor requested leave to file an amended plan to retain her Verona Road residence and surrender all other properties.[18] Debtor's counsel stated that she had not done so sooner because he had only just

---

[10]  *Chapter 13 Plan Dated July 28, 2022*, Dkt. No. 17 at §2.1.

[11]  Id. at §2.2. The plan suggests the parcel is located in "Luzerne Mine, PA" but the Court will utilize "Lucerne Mines" as the proper identifier as this is the location's generally-accepted name and was properly referenced as such by the Debtor in her schedules.

[12]  See *Order of Court*, Dkt. No. 48.

[13]  See *Chapter 13 Trustee's Objection to 7/28/2022 Plan and Request for Conversion*, Dkt. No. 53.

[14]  Id.

[15]  Id.

[16]  Id.

[17]  Id.; see also Dkt. No. 52 (trustee request for contested confirmation hearing); see generally *Audio Recording of May 9, 2023 Hearing* at 11:16:00-11:17:09 a.m.

[18]  *Transcript of Hearing Held May 9, 2023*, ("May 9 Trans."), Dkt. No. 92 at 4.

3

received permission from the Debtor to file an amended plan.[19] He also declared the Debtor's intention to make a $3,000 payment to cure the plan arrears within two weeks.[20] The Court granted the Debtor leave until June 9, 2023 to file the amended plan.[21] The Court also set a hearing on the trustee's motion to convert the case to chapter 7 and warned that "if the [amended] Plan does not materialize or if the Debtor is not making the $3,000 payment … to at least keep this case active and pay down the arrears, then I'll be inclined to convert the case."[22]

June 9th came and went without an amended plan or any additional payments. Instead, the Debtor filed a cursory response opposing conversion on the basis that "[t]he Debtor wishes to propose a smaller plan and surrender all of her property except her residence."[23] Yet three weeks later, by the June 28, 2023 hearing, the Debtor had neither made additional payments nor filed an amended plan. Still, Debtor's counsel requested a continuance because the Debtor was reportedly in the hospital and wanted to appear before the Court.[24] Counsel also reversed course and stated he did not have authority from the Debtor to file the amended plan he twice previewed in defense of conversion.[25] Given that the Debtor had been on notice since February 2023 to file an amended plan and failed to do so,[26] and she had yet to make any discernible progress

---

[19] Id.

[20] Id. at 6.

[21] Id. at 9.

[22] Id.; see also *Notice and Order Scheduling Hearing and Response Deadline Regarding Motion of the Chapter 13 Trustee to Convert Case From Chapter 13 to Chapter 7*, Dkt. No. 55.

[23] See *Debtor's Response to Trustee's Motion to Convert Case to Chapter 7*, Dkt. No. 57.

[24] *Audio Recording of June 28, 2023 Hearing* at 10:02:50-10:03:10 a.m.

[25] Id.

[26] See Dkt. No. 51 (trustee notes indicating that "Debtor to file an amended plan that lists all property to be surrendered, all property to be sold, and all property to be retained. Debtor to provide proof of value for all property to be retained. Debtor to have filed motions to employ broker for all properties to be sold.")

in her case, the Court denied the requested continuance and granted the trustee's motion to convert.[27] Debtor timely appealed.[28]

## II. JURISDICTION

This Court had authority to exercise jurisdiction over the subject matter and the parties under 28 U.S.C. §§ 157(a), 1334, and the Order of Reference entered by the United States District Court for the Western District of Pennsylvania on October 16, 1984. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A).

## III. DISCUSSION

The permissive language of section 1307(c) of the Bankruptcy Code provides that the Court "may" convert or dismiss a chapter 13 case "on request of a party in interest or the United States trustee and after notice and a hearing."[29] The analysis is two-fold: "[f]irst, it must be determined that there is 'cause' to act. Second, once a determination of 'cause' has been made, a choice must be made between conversion and dismissal based on the 'best interests of the creditors and the estate.'"[30] Several factors can constitute cause, including: unreasonable delay by the debtor that is prejudicial to creditors, nonpayment of fees and charges, denial of confirmation of a plan, and a material default by the debtor with respect to a term of a confirmed plan.[31] Within this framework, the decision to convert or dismiss a chapter 13 case is left to the sound discretion of the Court based on what is in the best interest of creditors.[32]

---

[27] See *Order Converting Case Under Chapter 13 to Case Under Chapter 7, Setting Deadlines, Scheduling Status Conference, and Terminating Wage Attachment*, Dkt. No. 60.

[28] See *Notice of Appeal and Statement of Election*, Dkt. No. 69.

[29] 11 U.S.C. §1307(c).

[30] In re Van Gompel, 632 B.R. 730, 735 (Bankr. D.S.C. 2021).

[31] See 11 U.S.C. §§ 1307(c)(1)-(11).

[32] In re Kaiser Aluminum Corp., 456 F.3d 328, 340 (3d Cir. 2006) ("the bankruptcy courts have broad authority to act in a manner that will prevent injustice or unfairness in the administration of bankruptcy estates").

Here, ample cause existed to either convert or dismiss the case. At the time of the June 28 hearing, the plan was in material default. The Debtor missed five consecutive plan payments, triggering a plan arrearage of $5,000. Though she committed to sell the Lucerne Mines property, the Debtor failed to retain a broker and procure a sale within the deadlines set by the Court.[33] And finally, she also failed to file an amended plan to surrender additional properties as she twice promised after acknowledging that the July 2022 plan was not feasible.[34] Her delay is both inexplicable and unreasonable, particularly given the Court's warnings that conversion was a likely consequence if an amended plan was not filed.

If, in fact, the Debtor was hospitalized in June 2023, the Court is certainly sympathetic. But the root of the problem is that, despite several prompts from the chapter 13 trustee and this Court, she took no action to substantially advance the case over the many months before her ailment. As early as November 2022, the Debtor received the taxing authorities' claims showing that she severely underestimated her real estate tax liability. Two months later, the chapter 13 trustee advised the Debtor to file an amended plan to either surrender additional properties or justify the values of those she chose to retain.[35] Even though the Debtor had nothing to show by May 2023, the Court still provided her one last opportunity to salvage the case. Unfortunately, she failed to seize it.

Frankly, the Debtor's repeated dithering calls into question her good faith. Every debtor is subject to the requirement of good faith to prevent abuse of the bankruptcy process. Good

---

[33]  See *Chapter 13 Initial Case Management Order*, Dkt. No. 6 at ¶ 2 ("…to the extent the Debtor(s) are pursuing the sale of property, and absent further Order of the Court, the Debtor(s) shall within thirty (30) days hereof, file the requisite application to retain a broker; and within one-hundred and eighty (180) days hereof the Debtor(s) shall file the requisite sale motion.").

[34]  May 9 Trans. at 3-4 ("The problem with the case is the two properties that my client was trying to retain are too overly burdened with taxes to be able to propose a feasible plan.").

[35]  See Dkt. No. 51.

faith is meant to protect creditors from debtors "whose overriding motive is to delay creditors without benefitting them in any way or to achieve reprehensible purposes."[36] A debtor cannot remain in a chapter 13 proceeding without proof that a confirmable plan is in prospect.[37] The fact that the Debtor identified the solution to her feasibility problems but failed to carry it out suggests that she was not serious about confirming a chapter 13 plan.[38]

The next step is to determine whether dismissal or conversion is "in the best interests of creditors and the estate."[39] Dismissal allows creditors to resume their collection efforts under applicable non-bankruptcy law. When virtually all the creditors hold liens and possess viable remedies to liquidate their collateral, dismissal is a suitable option. Dismissal is also preferable when the estate lacks sufficient equity to generate a distribution to general unsecured creditors. It would be a waste of time, effort, and resources to appoint a trustee to administer an insolvent estate.

In this case, the Debtor appears to have substantial non-exempt equity that could yield a return to general unsecured creditors. She claims to be the sole owner of the Lucerne Mines property which has a current value of $30,000. The Debtor did not claim an exemption on the property and no creditor has come forward alleging a secured claim on this asset. Assuming a chapter 7 trustee could liquidate the property at this amount, the holders of allowed general

---

[36]  In re Lots by Murphy, Inc., 430 B.R. 431, 434 (Bankr. S.D. Tex. 2010).

[37]  In re Kelly, 649 B.R. at 452.

[38]  Under less compelling circumstances, the Court might also examine the Debtor's good faith relating to inconsistent statements made in these proceedings. At the May 9 contested confirmation hearing, Debtor's counsel said he finally received authority from the Debtor to file an amended plan to surrender all properties with the exception of her residence. Based on this statement, the Court granted leave for the Debtor to do so. A month later (at the June 28 hearing on the trustee's motion to convert), Debtor's counsel stated he did not have authority from his client to file an amended plan. Whether he had that authority at the May 9 hearing or simply said so to buy more time remains an unanswered question.

[39]  11 U.S.C. § 1307(c).

unsecured claims (which currently total nearly $22,000) could receive a significant dividend from the estate.[40] Accordingly, there is sufficient value to justify the appointment of a chapter 7 trustee.

Ultimately, conversion is in the best interests of creditors and the estate because the debt collection and enforcement process under state law can be expensive, time consuming, and cumbersome. Conversely, unsecured creditors greatly benefit from the collective liquidation process of a chapter 7 proceeding whenever there are material unencumbered, non-exempt assets in the estate. It is also advisable to have a chapter 7 trustee "kick the tires" of the estate to independently verify the value of the assets as an estate fiduciary. A trustee will act promptly to liquidate the estate or abandon unnecessary assets, bringing closure to a bankruptcy that has dragged on far too long. And assuming the Debtor's valuations are accurate, the administration of a chapter 7 estate should not jeopardize her ability to retain her residence. In short, conversion was a significantly better option for creditors and the estate.

## IV.  CONCLUSION

For the reasons stated on the record and memorialized herein, the Court granted the chapter 13 trustee's motion to convert the case from chapter 13 to chapter 7. This opinion constitutes the Court's findings of fact and conclusions of law in accordance with Fed. R. Bankr. P 7052.

ENTERED at Pittsburgh, Pennsylvania.

Dated: September 1, 2023

GREGORY L. TADDONIO
CHIEF UNITED STATES BANKRUPTCY JUDGE

Case administrator to mail to:
Debtor

---

[40]   See Claim Nos. 1-1 (Cavalry SPV I, LLC), 10-1 (LVNV Funding, LLC), 11-1 (Peoples Natural Gas Company LLC), 12-1 (Verizon), 14-1 (Bridgecrest Credit Company LLC), 21-1 (Penn Hills School District), and 22-1 (Municipality of Penn Hills).